Gkoesbeck, C. J.
The petition for the writ of habeas corpus recites that Isaac Bergman, the petitioner,is a citizen of the United States of America, and of this state, and is restrained of his liberty by John A. Martin, as sheriff and jailer of the county of Laramie, at the jail of said county; that the pretense of such restraint, according to the best information of the petitioner, is by an order of commitment of the district court of the first judicial district, sitting within and for the county of Laramie, a copy of which order is attached to the petition; that the restraint and imprisonment of the petitioner is illegal, in this: (1) That the said district court was without jurisdiction in the premises; (2) that the said commitment was made in an alleged proceeding for contempt, which alleged contempt consisted in not obeying what is called a “ request” or “ order, ” which is attached to the petition, and in not obeying what is called a “further order, ” also attached to the petition; (3) that the said order of commitment was illegal, in this: that it is without limit; (4) that the said order of commitment is illegal, in this; that the said petitioner was held in contempt in matters which had not occurred at the time the said last-mentioned order was made returnable, and in which the petitioner had no hearing, and no opportunity to be .heard. The petition closes with the usual averments that the illegality of the imprisonment of the petitioner has not been adjudged upon a prior proceeding of the same character, and that the application for the writ has not-been made to, and refused by, any court or judge. The orders referred to are sufficiently set out in the answer and return of the said sheriff to the writ, and the substance of such answer and return is given in this opinion.
This court has been invested with original jurisdiction in habeas corpus by the constitution of this state. Section 3, art. 5, of the constitution of Wyoming. The supreme court of the territory of Wyoming also exercised this original jurisdiction, under the organic act of the territory and the acts of congress relating to habeas corpus. The proceedings and practice in babeas corpus set forth in chapter 1 of title 17 of the Revised Statutes of Wyoming appear to he applicable herein, and the petition and answer are drawn thereunder. Under the provisions of this statute, the writ-does notissue, as of course, upon the application. Sec. 1269, Rev.St., provides that “if, from the showing of the petitioner, the plaintiff would not be entitled to any relief, the court or judge may refuse the writ.” And section *399 1272 directs that, “if the writ is disallowed, the court or judge shall cause the reasons for said disallowance to be appended to the petition, and returned to the person applying for the writ. ” This is the rule under the common law, and is the practice uniformly followed by courts and judges upon application for the writ, unless the statute of the jurisdiction points out another method. The writ can only issue to one “entitled to it, ” and it should not be granted without inquiry. To allow the writ, without determining that the petitionerhad made a prima facie case, would make it a mere ministerial act; and a clerk of a court or other ministerial officer might issue it as in case of mesne process, and as an ordinary writ. The right to the writ “is a right in a larger and more liberal sense, — a right to be delivered from all unlawful imprisonment. ’’ Until early in the present century, in England, the opinion prevailed that the court was bound in the first instance to issue the writ of habeas corpus as of course, without exercising its discretion, as to the grounds upon which the writ issued or moved. But it clearly appears that all the leading later decisions, both English and American, establish the rule that probable cause must first be shown to obtain the writ, whether it is granted at common law or under the statute; and this rule has been followed without interruption, in this country, in both federal and state courts, and is upheld, as a prominent author well terms it, “in a multitude of cases.” Church, Hab. Corp. § 92, and the cases there cited.
Our examination of the petition, after a long and exhaustive argument, in which the sufficiency of the allegations of the petition were not raised, or even alluded to, except as to the legal effect thereof, shows the petition defective in many particulars. The allegation that the court is without jurisdiction does not state wherein either as to the person or the subject-riiatter of the pontempt proceedings, and in fact the whole petition is lacking in'sufficiency aiid perspicuity of statement. In order, however, to decide the question raised in the fourth allegation of the petition, we reluctantly granted the writ, as it appears impossible to determine, from the order or mittimus attached to the petition, that the hearing was had, and we prefer to err on the side of liberty, and to “spell out” vague and indefinite allegations, and ta order a hearing, in order that the whole record of the committing court may be reviewed, and that the important public questions raised in the argument of counsel may receive a careful and thorough consideration at our hands.
The answer and return of tne sheriff of Laramie county aver that he has now, and since the 17th of November, 1890, has had, the petitioner in his custody under and by virtue of certain orders and process of the district court of Laramie county, certified copies of which are appended to the answer and return. These papers were submitted in evidence, and constitute the record and proceedings of said court in this matter. The record discloses that the petitioner, Isaac Bergman, was probate judge of Laramie county on the 10th day of July, A. D. 1890, when the constitution of this state went into effect; that, as such judge and court, he had actual possession of the records, papers, and proceedings of the late probate court of Laramie county on that day, and has continued in such possession since that date; that the district court of said county, claiming that, by operation of the constitution, the same were transferred iu contemplation of law into the custody and possession of said court, on November 11, 1890, when Bergman was in said district court, required him, in open court, to deliver the records, papers, and proceedings of the late probate court of Laramie county to said district court, or show cause why he should not do so; that thereafter the court made an order requiring the sheriff of Laramie county to request and demand of said Bergman the said records, papers, and proceedings, finding that the same were in Bergman’s possession, and requiring him to turn over the same to the sheriff; that such order was served by the sheriff, who made said request, to which Bergman made no response, and did not turn over any books, papers, records, or proceedings to the sheriff; that thereafter the district court, finding these facts, and that Bergman was still in the actual possession of the probate records, and had been since July 10,1890, in the actual possession thereof, and had failed to turn over the same to the court, or its clerk or appointed officer, entered its order, and directed the service of a copy thereof on said Bergman, requiring him to appear on November 17, 1890, at an hour specified therein in said district court, and to there show cause why he should not be punished for his contempt of court in re *401 fusing to comply with its said order to turn over said probate records; that said rule to show cause was served on Bergman ; that he appeared in person and by counsel on said 17th of November, in pursuance of the rule to show cause why he should not turn over said probate papers and records, and, being so present, did not state any cause in answer to the rule, but submitted the cause on the evidence before the court, and on the said rule; that the court determined and found that Bergman was in possession of thesaid records,books, and papers, and had been since the date aforesaid; that Bergman had failed and refused to deliver up the same; that, in the presence of Bergman, the court further found that it was entitled to the possession thereof, and that the same were the records of said court, and of right belonged to its custody ; that the court then informed Bergman of its findings and decision, and again, in open court, requested Bergman to permit the court to take possession of said records, etc., and inquired of him whether or not he would permit the court to take possession thereof, whereto Bergman replied that he had heard the ruling of the court, and declined to make any other or further answer; that the second time, and directly thereafter, the court made the same request of Bergman, whereto Bergman made the same reply as at first; that the court then asked Bergman when he would permit the court to take possession of said records, nr when he would deliver the same to the court or its officers, whereto Bergman answered that he could not say, and declined to make any further answer; that thereupon the court found Bergman will-fullyand contumaciously in contempt,and ordered and adjudged that he be committed to the common jail of Laramie county, until such time as he shall deliver or cause to be delivered to the court the said records, papers, and proceedings; and, further, that Bergman be in open court committed to the custody of the sheriff of said county of Laramie, to be confined in the jail thereof until he should make such delivery, or cause the same to be made. Iu this proceeding we cannot pass upon any of the alleged irregularities of the district court in the contempt proceedings. In thishearing, wecan only consider the questions of jurisdiction of the subject-matter, and of the person of the defendant, and whether or not the judgment of the court is valid. It is unnecessary to quote authorities in support of this position, as they appear to be wholly in harmony with this view.
1. It is contended that the rule or order to show cause is a “process” of the court, and, as section 15 of article 5 of the constitution of this state provides that “the style of all process shall be ‘ The state of Wyoming,’” that the rule or order not being so styled was void. In the case of Wilson v. Territory, 1 Wyo. 155, the only reference in the opinion on this point is this brief sentence: “We further believe that the plaintiff' in error did not waive any of his rights in these proceedings, by appearance or otherwise.” But, in that case, the court below was held to be without jurisdiction, because it had issued an attachment for contempt agaiust Wilson for the purpose of showing cause why he should not be punished for contempt, without any evidence, by affidavit or otherwise, showing that a contempt of the court had been committed. Here the committing court had an affidavit and other evidence before it, and the proceedings are not similar. In the Wilson Case, the court acquired, or attempted to acquire, jurisdiction by its attachment; but in this case the district court for Laramie county acquired jurisdiction by the personal service of its order or rule, and by the voluntary submission of Bergman, who appeared, as the record discloses, both in person and by counsel, and the question of jurisdiction was not raised, and the validity of the rule or order to show cause was not questioned. The case cited by counsel for the petitioner establishes the rule. Dix v. Palmer, 5 How. Pr. 234. Whenever the defendant appears in a civil cause, he admits himself to be regularly in court, and hence all defects in the summons and its service, and even the total omission of any summons at all, become immaterial. This rule in civil causes, where the process has been irregular or defective, we apprehend would apply to criminal or quasi criminal cases; and, when a defendant appears and pleads to an indictment, he would not probably be heard to complain that the bench-warrant upon which he was arrested was not styled, or did not bear teste, in the name of the sovereignty.
2. We can hear, under the allegation of want of jurisdiction, objections to the power of the court to issue the several orders to turn over the papers and records of the late probate court of Laramie county, and its authority to punish for *403 contempt of such orders. There can be no doubt that the probate court, in each county created by the organic act and the -laws of the late territory of Wyoming, was abolished by the constitution of Wyoming, and that it was divested of its jurisdiction, with which the district court of the same county waseomqiletely invested. Section 1 of article 5 of the constitution vests the judicial power of the state in the senate sitting as a court of impeachment, in a supreme court, district courts, justices of the peace, courts of arbitration, and such courts as the legislature may, by general law, establish for incorporated cities and towns. Nowhere in the constitution are probate courts recognized as separate tribunals or courts. Section 10 of article 5 confers original jurisdiction on the district courts of the state of all causes, both at law and in equity, and in all criminal cases, of all matters in probate and insolvency, and ofsuch special cases and proceedings as are not otherwise provided for, and said courts are also given therein original jurisdiction in all cases and proceedings, in which jurisdiction shall not have been by law vested exclusively in some other courts. Section 17 of article 21 of the constitution provides that, “when this constitution shall go into effect, records and papers and proceedings of the probate court in each county, and all causes and matters of administration and other matters pending therein, shall pass into the jurisdiction and possession of the district court of the same county; and the said district court shall proceed to final decree or judgment, order, or other determination, in the said several matters and causes, as the said probate court might have done if this constitution had not been adopted.” It would appear,from a reading- of these sections of our supreme law, that the'district courts have been made courts of boundless original jurisdiction; and it certainly is clear that such courts have, since the adoption of the constitution, been clothed with exclusive original jurisdiction in probate matters, and that the probate courts of the territory were, by the constitution, when it was warmed into being by the admission act of congress, stripped of all jurisdiction, and instantly abolished. In addition to the sections of the constitution itself, conferring, in the plainest and most unmistakable terms, exclusive original jurisdiction in probate matters upon the district courts of the state, the schedule to the constitution directly provides that these courts shall have jurisdiction of the papers, records, and proceedings of the probate courts; and not only that, but shall succeed to the jurisdiction of the probate courts, and hear, try, and determine all. matters and causes which the probate court would have heard if the constitution had not been adopted. It Is urged that the meaning of said section 17 is modified by, or is in conflict with, the provisions of section 19 of the same article of the constitution, which provides that “all county and precinct officers who maybe in office at the time of the adoption of this constitution shall hold their respective offices for the full time for which they have been elected, and until such time as their successors may be elected and qualified, as may be provided by law, and the official bonds of all such officers shall continue in full force and effect as though this constitution had not been adopted, ” and that this clause should be construed in such manner as to continue the office of probate judge, who was, by the territorial law, ex oMcio county treasurer, until the expiration of the term of office for which he had been elected. We think that, when the constitution took effect,' there, was no such office as probate judge, and the clause, “who may be in office,” could not apply to one whose office and court were abolished by the constitution. The constitution nowhere recognized such an office, and the jurisdiction of the probate courts was transferred by that instrument to the district courts. Even if these sections were in conflict, the familiar rule of construction must be applied, and one part of the constitution must not be allowed to defeat another, if, by any reasonable construction, the two can be made to stand together. Cooley, Const. Li in. pp. 68, 70.
The clause in section 19 of the schedule (article 21) of the constitution, “who may be in office at the time of the adoption of the constitution,” must mean such officers as are permitted to hold their respective offices by the terms of the constitution, and not such as are ousted by its provisions. Any other rule of construction would defeat the plain intent and meaning of the constitution. Under the territorial statutes, although the offices of probate judge and county treasurer were combined, and the probate judge was styled ex officio county treasurer, the intent and meaning of the various statutes *405 applicable to these offices is to consider them as two separate and distinct offices, the duties oí each to be performed by one and the same person. It was so held in the case of Territory v. Ritter, 1 Wyo. 318, and the following cases were cited in the opinion of the court, to the effect that to make a person an ex oíñcio officer, by virtue of his holding another office, does not merge the two offices into one: People v. Edwards, 9 Cal. 286; People v. Love, 25 Cal. 520; Lathrop v. Brittain, 30 Cal. 680; People v. Ross, 38 Cal. 76. The statute of 1886, found in section 1083 of the Revised Statutes, provides that the offices of probate judge and county treasurer shall appear on the ballots as one office only, and the legislative intent is clear that the two distinct and separate offices should be held by one person, and the elector could vote for but one person to hold the two offices. This statute was in force at the time of the election of the petitioner, and subsequent amendatory legislation, as found in the recent election laws, has combined the two offices as “probate judge and county treasurer.” As Mr. Justice Blair stated in his opinion in the case of Territory v. Ritter, supra: “The correctness of this view, as to the intent of the legislature, is not lessened, but, on the contrary, greatly strengthened, by the fact that the duties of the office of probate judge, and that of county treasurer, have no connection with each other; each is clothed with different and distinct powers; each to perform separate and distinct duties, — the functions of the former being wholly judicial, the latter purely ministerial.” The abolition of probate courts and the office of probate judge does not interfere, therefore, with the right of the petitioner to hold the office of county treasurer, he being in that office, which was andis separate and distinct from the office of probate judge, at the time of the adoption of the constitution, and being expressly recognized by that instrument, and not being abolished or interfered with thereby.
3. The district court being constructively in the possession of the records, papers, and proceedings of the la te probate court of Laramie county, the petitioner holds them subject to the order of the court, and as a custodian thereof. He- has no right to them in any other capacity. Until they are turned over to the district court, which is entitled to the jurisdiction and possession of them, his possession is but the possession of that court, and he becomes directly subject to the orders of that court, while the records remain in his possession, in regard to the same. He stands in the attitude of a custodian.of the records of a court, and he must produce them when called upon. On refusal to do so, he may be punished for contempt. A court of general jurisdiction must have the inherentpower to control its own records, upon which its existence depends, and which have been lodged in its jurisdiction and possession. It would be impossible for such a court to exercise its probate jurisdiction, lately exercised by its predecessor in probate matters, without access at all times to the records of the late probate court. Without actual possession thereof, the court would be thwarted at every step. It could not adjudicate upon pending cases, nor could it know judicially that such cases were in existence, or the status-thereof, without a consultation of the records of the late probate court forits county. We cannot imagine a more chaotic state of affairs than the spectacle presented of a superior court, having a jurisdiction and unable to exercise it, with litigants clamoring for relief and action, and no means for affording them relief, with its records in the hands of one who refuses to surrender them, and with no power to compel, by summary proceedings, their production, or to punish the contemnor, in case of a refusal. Such a condition of affairs would be extraordinary. The rights of infant heirs, the tender care of insane and incompetent wards, would be set at naught, and no means provided to conserve an estate, to prevent its spoliation, or to protect those ever under the watchful and jealous eye of a chancellor. Unless such a court has control of its records, and power to secure actual possession when it has constructive possession, thereof, by drastic measures, its jurisdiction cannot be exercised or enforced', and the very object for which it was created would be absolutely defeated by the whim or caprice of one who has actual possession of its records.
4. While mandamus may lie to reach the one withholding the records of probate matters, the court is not compelled to wait the slow motions of some litigant in its probate branch who desires relief. The court, being entitled to these records, and papers, and undoubtedly competent to reduce them to its own possession, may *407 make and enforce its orders therefor by coercive measures.
5. The statutes of this state recognize the distinction between punitive and coercive contempts. Section 2602 of the Re vised Statutes provides that a witness refusing to be sworn to answer a question, or to subscribe to a deposition when lawfully ordered, may be imprisoned in the county jail, “there to remain” until he submits to be sworn, testifies, or gives liis deposition. Section 121 of the crimes act (Sess. Laws 1890, p. 144) provides that “whoever, having been duly served with a subpoena or citation, duly issued, refuses or willfully fails to obey the same, or secretes himself, or leaves the place of his residence to avoid being served with a subpoena issued, or that he has reason to believe will be issued for him, in any cause pending in any court, or in any matter before any legal authority, or, being present before any court or legal authority, and called upon to give testimony, refuses to take an oath or affirmation, or, being-sworn or affirmed, refuses to answer any question required by such court or authority to be answered, shall be fined not more than five hundred dollars, nor less than ten dollars, to which may be added imprisonment in the county jail not more than ninety days; but this section shall not prevent summary proceedings for contempt.” This section does not apply to the enforcement of an order of the court like the one under consideration, and it strictly and expressly provides that the section shall not prevent summary proceedings for contempt. An indictment setting forth the facts in this case could not be drawn under this section. There is absolutely nothing in our statute that regulates the proceedings in contempt cases, except those quoted above. One of the methods of punishment for civil and criminal contempts, disclosed by an examination of the authorities, is imprisonment to compel compliance by a party or witness with the requirements of an order or decree of court, (Rap. Contempt, § 180;) and so in 2 Bish. Grim. Law (7th Ed.) § 271, it is said: “When the proceeding is to enforce an order or to do a particular thing, the only escape for the defendant from perpetual imprisonment is, usually, to comply. ” In Williamson’s Case, 26 Pa. St. 9, Black, J., eloquently says: “Some complaint was made in the argument about the sentence being for an indefinite time. If this were erroneous, it would not avail here, since we have as little power to revise the judgment for that reason as lor any other. But it is not illegal, nor contrary to the usual rule in such cases. It means commitment until the party shall make proper submission. Regina v. Paty, 2 Ld. Rajrm. 1108; Yates’ Case, 4 Johns. 375. The law will not bargain with anybody to let its courts be defied, for a specified term of imprisonment. There are many who would gladly purchase the honors of martyrdom in a popular cause atalmost any given price, while others are deterred by a mere show of punishment. Each is detained until he finds himself willing to conform. This is merciful to the submissive, and not too severe upon the refractory. The petitioner, therefore, carries the key of his prison in his own pocket. He can come out when he will, by making terms with the court that sent him there. But, if he chooses to struggle for a triumph, — if nothing will content him but a clean victory or a clean defeat, — he cannot expect us to aid him. Our duties are of a widely different kind. They consist in discouraging, as much as in us lies, all such contests with the legal authorities of the country.” To the same effect is the opinion of Kent, C. J., in the Yates Case, quoted with approval in the Pennsylvania case, supra, where the question to be decided was the sufficiency of the return “that the prisoner was committed until tbefurther order of the court.” In Re Allen, 13 Blatchf. 275, it is held: “When the contempt consists of a violation of the order of court, and is a contempt not committed in its presence, and the statute does not prescribe the form of the order of commitment, the defendant may be imprisoned until he be discharged by order of the court, or until the further order of the court; ” citing and accepting the doctrine laid down by Kent, C. J., in the Yates Case. In Ex parte Sweeney, (Nev.) 1 Pac. Rep. 379,[1] although under the statutes of Nevada, no court or judge can impose a greater fine than $590, or imprisonment for more than five days, upon any person adjudged guilty of a contempt, it was decided by the supreme court of that state that a party may be committed to jail until the fine was paid at a certain rate per day, fixed by the statute; and the court in its opinion quotes approvingly a decision in Brown v. People, 19 Ill. 614, where the court *409 held that a justice of the peace might imprison a party in contempt, refusing to pay his fine, until the same was paid, although the statute allowed no one to be imprisoned by a justice of the peace for contempt. Judge Bahtou, of the Maryland court of appeals, (Ex parte Maulsby, 13 Md. 642,) released a petitioner on habeas corpus,where the eommitmentread, “ until he purge the -contempt by appearing before the grand jury,’’etc. It appearing to the judge that the grand jury had been discharged, so that it'would be impossible for the contemnor to obey the court’s order, although the learned judge was careful to say that the court had power to commit until the party answered or testified or produced papers before the grand jury, and that, in such case, “the commitment is a compulsory process to compel the party to obey the mandate of the court.” He further stated, although he discharged the petitioner, that “the term of imprisonment fixed by the warrant is ended by the operation of law, not because the court has not the power to commit for contempt for a period extending beyond the term of court, but in this case it has not done so. ” There are some cases which seem to hold a contrary doctrine, notably the case of Whittem v. State, 36 Ind. 196, on appeal proceedings, where the court held the evidence insufficient to constitute a contempt of court, and in glowing terms condemned the practice of courts committing until the further order of the court. In the Case of Leach, 51 Vt. 630, from which was evidently drawn the exact language stated in thefourth allegation of illegal restraint set forth in the petition in this case, the court held that a probate court could not imprison an executor for the non-performance of orders requiring the payment of money to the widow of a decedent, when the orders were not all due, and on the ground that it made the jailer a judge to determine the length of imprisonment, and because the commitment was, in effect, an imprisonment for debt, which was abhorrent to the law of Vermont; but the judge says, in order to place his meaning beyond question: “ Where a witness is contumacious, and refuses to obey the order of the probate court in giving evidence or other specific requirements, it would, no doubt, be competent, as a means of compelling obedience to the order of court, for the court to order imprisonment so long as contumacy should continue. Goff's Case, 3 Maulé & S. 203. But, in such a case, the court ordering the imprisonment judges of the time when the contumacy ends; and whether it would be competent for a court to order an imprisonment, without limit on the face of the order, beyond the term of court inflicting the punishment, need not be discussed here. ” In Shanks’Case, 15 Abb. Pr. (N. S.) 43, the statute controlling the matter provided thatimprisonment for contempt should not exceed 30 days.
6. The further objection is made that there can be no commitmentfor contempt, where the contemnor may be proceeded against by an indictment, and the following cases are quoted in support of this view: Baldwin v. State, 11 Ohio St. 681, and State v. Blackwell, 10 S. C. 37. These are strong cases, but we think that the court in eaqh case relied upon the peculiar statute of the jurisdiction. We have no statute at all that would reach this case, that we have been able to discover, with the assistance of the learned counsel, that provides any punishment in eases of contempt like the one under consideration. The great weight of authority, in the absence of direct statutory provision, is in the other direction. 1 Bish. Grim. Law, § 1067, and 2 Bish. Crim. Law, § 264, and the cases there cited. The only criminal statute providing punishment for contempt, and fixing a definite penalty, is section 121 of the crimes act, quoted above, and this expressly disclaims any attempt to curtail the power of the courts in this direction; hence authorities cited where statutory provisions regulate proceedings in contempt cases can have no weight with us. The common law prevails here, and is strengthened by our statutes, which run in the same line and in the same direction.
7.-It might be held that the contempt committed in the case before us was not a constructive contempt, but one committed in facie curiae, and the following cases would seem to sustain such a view: Ex parte Robinson, (Cal.) 12 Pac. Rep. 794;[1] Territory v. Murray, (Sup. Ct. Mont.) 15 Pac. Rep. 145;[2] Neel v. State, 50 Amer. Dec. 209. It appears from the record that the affidavit of the clerk of the district court was filed before the rule to show cause was issued, and that in open court, and by the orders of the court served upon him, the petitioner had full knowledge of the *411 charge against him. He appeared in the trial court in person and by counsel, submitted his case upon the evidence, says he has heard the order of the court, and declined to make any further answer. Can this be deemed anything more than a refusal to comply with the order of the court, made in his presence? Andisnot the retaining of the records, papers, and pro-ceedingsj after repeated requests to deliver them, and in the light of this full record, which must stand unimpeached in this case, and which speaks with no uncertain soundi a contempt committed in the presence of the court? Further speculation, however, is useless. We must, on this inquiry, hold that the record of the district court of Laramie county before us imports absolute verity, and cannot be questioned in this proceeding; that such court had jurisdiction of the person and subject-matter of the contempt proceedings before it; that; it had full power and authority to make, and enforce the orders it made to secure actual possession of the records, papers, and proceedings of its predecessor in probate matters, the late probate court of Laramie county; that its commitment was and is neither void nor erroneous; and that, in other words, and in the terse and expressive language of the statute, the court acted “within its legitimate province, and in a lawful manner, ” and we are not permitted, by that provision of the habeas corpus act, to question the correctness of its action. The record before us presents nothing to show that the district court acted arbitrarily,.harsh, or insolent towards the petitioner; but, on the contrary, it breathes a spirit of courtesy, conciliation, and moderation. It made “requests ” whenit might have made “demands, "and it is clear that it exercised coercion with extreme reluctance. We have pushed this inquiry to the very verge of our powers, recognizing the admitted high character of the petitioner. We believe that his conduct has been owing to a misconception of his rights and duties, rather than to a desire to thwart or obstruct the administration of justice. Certainly, no one can know better than he, from his admitted long service in a responsible judicial position, the imperative necessity of maintainingintact the dignity of the courts.and the majesty of the law. We .aekhowledge ourselves indebted to the learned counsel for the petitioner, and to the gentlemen who, as amici curiae, have aided us by their experience, knowledge, and research in this matter. The petitioner will be remanded to the custody of the sheriff of Laramie county
Conaway, J., concurs. Merrell, J.f not having qualified, did not sit in this case.

 18 Nev. 74.

 71 Cal. 608.

 7 Mont. 251.