WILL OF HURLEY.

*April 4—May 3, 1927.*

*Executors: Time within which estates should be settled: Delay in order to sell lands: Accounts: Taxes and interest paid: Claims paid without formal judgment entered: Reopening administration of estate: Discretion of court.*

1. Although sec. 313.14, Stats., declares the public policy of the state to be that the time within which an estate should be settled be limited, it is the duty of the executor, after expiration of the time so fixed, to care for the property and conserve the estate until it is finally settled. It is also his duty to close the affairs of the estate as soon as that can be done without jeopardizing the interests of the estate, and the burden rests upon him to justify any unusual or undue delay. p. 22.
2. In this case the executor is *held* to have met the burden of satisfactorily explaining the lapse of twelve years in closing the administration of the estate by showing that the estate could not be closed until the real estate was sold, and that he made every usual effort to sell the land but could not do so. p. 23.
3. The executor was *held* properly charged with the rentals received and properly credited with the taxes paid upon the land in his possession, it being his duty to protect the interests of the estate by paying the taxes thereon while it was in his possession. p. 23.
4. He, however, should have received credit for interest paid upon mortgages upon the real estate, although no claims were filed

against the estate for such interest, where it was established that such payments were upon valid mortgages, it being his duty to protect the property of the estate by paying valid liens. p. 24.

5. Credit should be given the executor for the full amount of interest paid by him upon the mortgages, including a higher rate of interest after their renewal, it appearing from the undisputed proof that neither the heirs nor the executor was able to secure a renewal of the loans at a lower rate. p. 25.

6. The absence of the judge's signature from the judgment on claims prepared and filed does not prevent the court from crediting the executor with sums he paid upon just claims against the estate at the direction of the judge, since sec. 313.02, Stats., gives the county court discretionary power to allow all verified claims without further proof than verification. p. 25.

7. Where the administration of the estate was closed before the executor had an opportunity to present vouchers showing the payment of claims against the estate, the refusal of the court to reopen the proceeding to permit the executor to produce vouchers was erroneous. p. 25.

APPEAL from an order of the county court of Pierce county: CARL M. LYNN, Acting Judge. *Reversed.*

*Edward J. Hurley,* as executor of the will of Catherine Hurley, deceased, appealed from an order refusing to allow credit in his final account for interest paid upon mortgages and for claims paid by the executor.

The personal property of the deceased was not sufficient to pay debts and legacies. The executor took possession of the real estate and paid taxes and interest upon the mortgages that were upon the property at the time of the death of the testatrix. During the time that the executor was in possession of the land he received rents therefrom amounting to $10,749.52 and expended $2,840.30 for taxes and $6,450.81 for interest upon mortgages upon the land. The county court charged the executor with the full amount of the rents received and credited him with the taxes paid, but refused to credit him with the amount of interest paid upon the mortgages because the notes secured by the mortgages were not filed as claims against the estate.

Claims against the decedent aggregating $1,443.13 were paid by the executor.  The record contains a blank form of judgment upon claims which listed all of the claims paid by the executor except the bill of the doctor who attended the deceased in her last illness.  This judgment was not signed by the county judge.  The undisputed proof is that the county judge then presiding, who is since deceased, directed the executor to pay bills against the estate and the interest and taxes and told him that the claims would be allowed as filed.  The executor testified that these claims had been paid, but did not produce his vouchers because he was called to the hearing on his final account from Chicago, while his vouchers were all at his home in Dakota.  The court refused to credit the executor's account with the amount of claims paid on the ground that these claims had never been allowed by the court and that no satisfactory proof had been made that these claims were just demands against the estate.  Thereafter the court refused to reopen the case to permit the executor to produce his vouchers and his proof to establish that the claims had been paid and that these were just claims against the estate.

For the appellant there was a brief by *W. G. Haddow* of Ellsworth and *C. R. Freeman* of Menomonie, and oral argument by *Mr. Haddow.*

For the respondents there was a brief by *White & White* of River Falls and *Spencer Haven* of Hudson, and oral argument by *Ferris M. White.*

STEVENS, J.  (1) The case presents the very unusual situation where an executor retained possession of real estate belonging to the testatrix without attempting to make a final settlement of the estate for more than twelve years. Sec. 313.14 of the Statutes declares the public policy of the state that the time within which an estate should be settled shall be limited.  But after the expiration of the time fixed by statute, it is still the duty of the executor

to care for the property of the deceased and to conserve
the estate until it is finally settled. *Lindemann v. Rusk,*
125 Wis. 210, 225, 104 N. W. 119. Nevertheless it is
the duty of the executor to close the affairs of the estate
as soon as that can be done without jeopardizing the inter-
ests of the estate. Upon his shoulders rests the burden of
justifying any unusual or undue delay in the administration
of the estate.

(2) This estate could not be closed until the real estate
was sold. The executor, residing in Dakota, was selected
by the deceased from among her sons to administer her
estate. From the beginning of his administration he made
every effort to sell the land. He did what every prudent
owner of land customarily does: he advertised the land for
sale and placed it in the hands of a real-estate agent in
the locality where the land was located. In the meantime
he managed the property so that it yielded a profit of ap-
proximately $1,500 above the taxes on the land and interest
upon incumbrances placed thereon by the testatrix.

An examination of the account shows that the executor
made many trips from his home in Dakota to look after
the land and that he claimed a nominal compensation of
only $100 for his services. There is nothing in the record
which warrants a finding that the executor was not trying
to do his full duty. Under these circumstances it must
be held that the executor has met the burden of satisfac-
torily explaining what would under ordinary circumstances
be held to be an unwarranted delay in closing the admin-
istration of the estate.

The executor was properly charged with the full amount
of rentals received and properly credited with the taxes
paid upon the real estate in his possession. It was clearly
his duty to protect the interests of the estate by the pay-
ment of such taxes so long as the real estate was in his
possession. *Long v. Landman,* 118 Mich. 174, 181, 76
N. W. 374, 377. The interest paid upon the mortgages

upon the real estate stands upon the same basis. No one questioned that these mortgages were valid liens upon the land. It was the duty of the executor to protect the interests of the estate in the lands in his possession. Had he neglected to take care of the interest on these mortgages, thereby causing loss to the estate, he would undoubtedly be liable to the estate for his failure to pay this interest. *Russell v. Wheeler,* 129 Mich. 41, 46, 88 N. W. 73, 74. "The governing principle is that—subject to the contingency of the expense being disallowed by the court—he may do whatever is necessary for the preservation of the property of the estate, and the specific character of the act done is altogether immaterial. Hence, necessarily, his power must extend to the preservation of property by paying off liens existing on it, when necessary for the purpose." *Estate of Freud,* 131 Cal. 667, 671, 63 Pac. 1080.

For the protection of the executor he should have required the notes secured by these mortgages to be filed as claims against the estate. But the fact that he did not do so does not relieve him of the duty of protecting the estate. In the absence of the allowance of these notes as claims against the estate the executor acted at his peril in paying interest thereon. But the fact that these payments of interest were made without claims being filed against the estate does not deprive the executor of the right to a credit for such interest payments when it is established that such payments were made upon valid mortgages to protect the estate. It would be manifestly unjust to charge the executor with all income received from the real estate without crediting him with all sums expended by him to protect real estate which produced that income from loss because of valid liens thereon created by the deceased in her lifetime. *Jennison v. Hapgood,* 10 Pick. 77, 105.

The New York cases holding that an executor is not entitled to credit for interest paid upon mortgages against real estate in his possession were decided under a statute

which makes it the duty of the heir or devisee to "satisfy and discharge the mortgage out of his own property without resorting to the executor or administrator." *Fox's Estate,* 159 Mich. 420, 124 N. W. 60, 61.

The conclusion follows that the executor should have been credited with the full amount of interest paid by him, including interest at eight per cent. after 1921, because the undisputed proof is that neither the heirs nor the executor was able to secure a renewal of the mortgage loans at a lower rate of interest.

(3) All claims filed were verified except one for $32.59 and no objection was made to any claim filed. Under sec. 313.02 of the Statutes the county court might, in its discretion, allow all verified claims without further proof. The undisputed evidence is that the county judge then presiding directed the executor to pay these bills. It is unfortunate that the county judge did not affix his signature to the judgment on claims that was prepared and filed. But the absence of the signature does not prevent the court from crediting the executor with sums he paid upon just claims against the estate at the direction of the county judge.

The court should have given the executor an opportunity to secure and present his vouchers showing payment of these claims. But in view of the fact that no heir or other person interested in the estate filed any objection to any of these claims, and further in view of the fact of the undisputed proof that the executor has paid the amounts claimed by him upon these claims, we see nothing to be gained by putting the estate to the expense of a further hearing, and therefore direct the county court to credit the executor in his final accounting with the amounts reported as paid upon claims against the estate.

*By the Court.*—Order reversed, and cause remanded for further proceedings in accordance with this opinion. The costs of the executor to be paid out of the estate.