In In re Isaacson's Estate, 77 Idaho 12, 285 P.2d 1061, 1063, it is said:

"Although a joint will and acceptance of benefits thereunder by the survivor may, under some circumstances, constitute an irrevocable contract, such facts do not make the joint will the irrevocable will of the survivor; and his joint will may be revoked by a later will. Furthermore, the question of whether an irrevocable contract exists is not an issue when the later will is tendered for probate.

"The issues of whether such an irrevocable contract exists and the enforcement thereof are matters to be tried out in a court of equity, and are beyond the equitable powers of the probate court in probate matters. * * *"

The statement as to the forum in which the contractual right is to be litigated does not, of course, apply in this state because of our statute quoted above.

Also in Annotation, 169 A.L.R. 9, 53, we find the following:

"Generally speaking, the remedy of a person injured by the violation of a contract for the execution of wills containing reciprocal bequests and bequests to third persons effective upon the death of the surviving testator is not to be had in a contest of the probate of the will which constitutes the violation of which complaint is made, since, in the absence of statute, the only issue on a contested probate is whether the paper propounded is 'the last will of the decedent.' * * *"

Other authorities are Smith v. Davis, 200 Ga. 317, 37 S.E.2d 182; Id., 203 Ga. 175, 45 S.E.2d 609; In re Kenny's Estate, 233 Iowa 600, 10 N.W.2d 73; In re Cocklin's Estate, 230 Iowa 415, 297 N.W. 864; Id., 232 Iowa 266, 5 N.W.2d 577; 236 Iowa 98, 17 N.W.2d 129, 157 A.L.R. 584.

In consequence of what we now say here, the opinion heretofore rendered and the order and direction contained in the final paragraph thereof is modified and the last paragraph made to read as follows:

"It is, therefore, ordered that the judgment of the trial court be reversed; that the judgment and order admitting the 1949 instrument to probate as the last will and testament of the deceased be vacated, set aside and held for naught; that the court enter its judgment admitting the 1954 instrument to probate as the last will and testament of the deceased; and that the court make such orders as may be necessary to carry into full force and effect this direction."

Because of the direction now given a rehearing on appellant's petition is unnecessary.

Rehearing denied and directions in original opinion modified.

---

**In the Matter of the ESTATE of Frank Finley MAYNE, Deceased.**

**Clair Murray MAYNE, Appellant,**

**v.**

**Willis J. BRUCE, Special Executor, Appellee.**

No. 2891.

Supreme Court of Wyoming.
Nov. 3, 1959.

Whitley & Liamos, Newcastle, and Ralph R. Bremers, Omaha, Neb., for appellant.

Jones & Dumbrill, Richard S. Dumbrill, Newcastle, for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Justice PARKER delivered the opinion of the court.

This is an appeal from (1) an order removing an executor because he had failed to comply with the orders of the court without just cause and lawful excuse, and (2) an order adjudging said executor to be in contempt for wilful disobedience of the court's order without just cause and lawful excuse.

Since docketing of the case in this court appellee has filed a motion to dismiss the appeal on the ground that it is now moot

because Clair Murray Mayne has purged himself of contempt and further that he is incompetent to be reinstated as executor. As to the contempt, appellee alleges that Mayne has returned all funds belonging to the estate and has been released from custody. As to the competency, appellee asserts that Mayne was adjudged incompetent in the State of Nebraska, committed to a Douglas County Hospital in Omaha and later removed to a Veterans Administration hospital there. Appellant's counsel has filed a counter-affidavit alleging that although the said Clair Murray Mayne was found by the Douglas County Board of Mental Health to be mentally ill said Mayne has in the opinion of his attorney made a full and complete recovery of his mental health. After study we have determined that the motion should be denied, and the appeal decided upon the merits.

The records show that Clair Murray Mayne, a nonresident of the State of Wyoming, was appointed as executor of the Estate of Frank Finley Mayne on November 12, 1955, and that the various routine orders concerning the administration were entered thereafter. On September 24, 1957, the presiding judge, the Honorable Preston T. McAvoy, entered an order reciting that upon a reading of the probate docket he had learned that the estate was delayed in settlement, and he therefore ordered Mayne and his resident attorney to prepare and publish a notice of final settlement and in due course file petition for final settlement and distribution or failing in same show cause on October 7, 1957, why an order of contempt should not issue. On October 7 a hearing was held, the attorney made a statement, Mayne testified evasively and ambiguously, merely saying in response to the court's inquiry as to reasons for failure to close the estate, "I cannot comply with the Order of the Court because to do so, I feel I would commit perjury." He made some explanation about the uncertainty of Government and production taxes, but from our reading they constitute neither excuse nor justification for noncompliance with the court's request. He also said that he had taken some $30,000 of estate money and placed it in a bank in Omaha, Nebraska. The court then made an order finding that the notice of final settlement was being published, that there was no cause sufficient to avoid the closing of the estate, that there was only a nominal indebtedness, and it was ordered that the executor forthwith furnish his attorney with needed information for the final account and petition for distribution, so that the attorney could proceed with the closing on or before the 28th of October 1957, or failing therein that he be relieved of his duties as executor. On November 6 his attorney asked and was granted an extension of time of thirty days to file the final account and petition for distribution. On November 9 the court entered an order reciting that the cash coming into the hands of the executor had materially exceeded the amount of his bond and ordered that an additional bond of $10,000 be provided. On the same day a further order was entered reciting the removal of the funds by Mayne and requiring him to deposit estate moneys in a Newcastle, Wyoming, bank. On November 27 Mayne wired the clerk of court, saying that he was "unable to file final estate report due to lack of information regarding U. S. Internal Revenue Service appraisal of estate mineral rights and other irregularities." On December 11 his attorney requested, and the court granted, an extension of sixty days. On March 7, 1958, the attorney again requested, and the court granted, an extension of ninety days. On April 24, 1958, Mayne requested authorization to transfer $15,000 out of the jurisdiction of the court into the jurisdiction of a Nebraska court. The matter was set for hearing on May 19. On May 5 at the request of the attorney the court again extended the time for filing the final account and petition for distribution for sixty days. On May 19 the attorney moved that the court vacate the order setting the hearing regarding the transfer of the $15,000 and requested that the matter be continued to a future date; an order was

entered accordingly continuing the hearing until further order of the court. On June 26, 1958, the Honorable G. A. Layman, Judge of the Fourth Judicial District, acting for Judge McAvoy, assigned the Mayne estate matter to the Honorable Franklin B. Sheldon of the Seventh Judicial District.[1] On July 14 Judge Sheldon entered an order reciting that from an examination of the file it appeared that Mayne had been ordered to provide additional bond and to deposit all moneys in the estate in the Newcastle bank, had failed to comply with the orders, suspended the power of Mayne as executor until the matter was investigated, cited him to appear and show cause on August 14 why his letters should not be revoked. Simultaneously, Judge Sheldon entered a similar order of suspension of the executor based upon the verified petitions of Maybelle Lyons and Mary Adele Gillaspie, sisters of the deceased and beneficiaries under the will. At a reported hearing on August 14 Mayne testified both in response to the questions of his attorney and those of the court. He insisted that the estate matters were not in order so that he could bring the estate to a close and that he therefore refrained from attempting to do so. He also insisted that the will provided that he was not to furnish a bond, that he furnished the first one anyhow but could not furnish the additional bond. He insisted also that he could not comply with the order to send funds back to Wyoming but had left them in the bank in Omaha because to do otherwise would be to violate his obligation. The court questioned him at length and explained with some pains the necessity of his proceeding to close the estate and to comply with the order which Judge McAvoy had issued but with no apparent cooperation from Mayne. After indicating that the letters testamentary to Mayne must be revoked, the court requested of one of the sisters to know whom she wished to act as administrator with the will annexed. She suggested Willis J. Bruce who owned land on which the deceased had had mineral rights and whom Clair Murray Mayne as nonresident executor had appointed to be his resident agent. Thereupon the court entered an order permanently revoking the letters testamentary to Clair Murray Mayne and appointing Willis J. Bruce as administrator with the will annexed. The court simultaneously issued an order adjudging Mayne to be in contempt until he complied with the order of court of November 9, 1957, and returned to the estate in the State of Wyoming the $34,000. Judge Sheldon then assigned the matter of the estate to the Honorable Rodney M. Guthrie who in the meantime had been appointed to succeed the Honorable Preston T. McAvoy, deceased.

Defendant has appealed, urging that the court erred in suspending Mayne's powers as executor, in permanently revoking the letters testamentary, in insisting upon the additional $10,000 bond, and in adjudging him guilty of contempt of court. Appellant also urges the errors of Judge Guthrie for abusing his discretion in refusing to release appellant until there had been compliance with the orders which Judge Sheldon had entered. As we understand it, appellant's arguments are:

1. The court was not justified in providing for a bond unless someone so requested.

2. The revocation of the letters testamentary left appellant without authority to return the estate moneys which he had taken from the jurisdiction.

3. The Wyoming statutes did not permit a suspension or revocation of the letters testamentary under the circumstances existing in this situation.

4. There is really no statutory time limit for final settlement and distribution and the executor could use his own judgment.

5. Appellant's commitment for contempt was for an indefinite period and hence illegal.

1. During late May and June, Judge McAvoy was seriously ill and died on July 20, 1958.

## I

■ Appellant argues that no person interested in the estate filed a petition under the provisions of § 2–133, W.S.1957 (§ 6–1012, W.C.S.1945), requesting an additional bond and that the court was therefore without authority in its requirement. No precedent is cited to substantiate the view. The appellant did not object to the court's initial requirement of furnishing a bond, and he could not well have done so because the statute is definite on the point. The fact that a petition may under § 2–133, W.S. 1957, be filed to request additional bond does not in our view limit the provisions of § 2–131, W.S.1957 (§ 6–1011, W.C.S.1945), providing that "the executor may at any time afterward, if it appear from any cause necessary or proper, be required to file a bond, as in other cases." The legislature clearly intended that the court have authority to require a bond if it appeared for any cause that it was necessary or proper, and this did not exclude information which had come to the court in a manner other than by a petition of an interested person. It seems to us that if the court were thus authorized to require the filing of bond on its own motion such requirement should not be limited to the initial bond but should apply during the entire period of administration. This is particularly true in the light of § 2–137, W.S.1957 (§ 6–1017, W.C. S.1945),[2] which provides:

"When it comes to his knowledge that the bond of an executor or administrator is, from any cause, insufficient, the judge or commissioner, without any application, must cause him to be cited to appear and show cause why he should not give further security, and must proceed thereon as upon the application of any person interested."

## II

■ A number of authorities are cited by appellant to show that an executor whose letters have been revoked is without any further authority, and this may be conced-

2. Our statute is identical to the California statute [West's Ann.Prob.Code, § 547]

ed. However, he took the funds from the State without authority, and we know of no reason why he could not return them the same way if he so desired.

## III

■ Some argument is made that there was not sufficient compliance with § 2–201, W.S.1957 (§ 6–1209, W.C.S.1945), and § 2–202 (§ 6–1210 W.C.S.1945), so that the order of suspension was justified without a full hearing prior thereto. No authorities are cited on the point, and it is unnecessary to discuss it except to say that the statute is clear that whenever a judge has reason to believe *from his own knowledge* or from credible information that the property has been removed from the estate or an estate has been wrongfully neglected he may suspend the powers and thereupon issue citation to the executor to show why his letters should not be revoked. This was done. Appellant had opportunity to appear and did appear. We find no error in the procedure.

## IV

■ Counsel for appellant argue that under § 2–304, W.S.1957 (§ 6–2305, W.C.S. 1945), an administrator or executor must know that the taxes have been paid and that since appellant was not certain of this he was justified in delaying the settlement. It is further argued that:

"* * * estates involving oil wells such as the instant estate sometimes take years to conclude and settle because the executor runs into many items of taxes, dealing with strange oil companies and other and numerous problems in this complicated world.

"From this briefer's research there is no specific time at which an estate must be settled according to Wyoming Statute.

* * * * * *

"Under the laws of Wyoming the executor is entitled to be reasonably cer-

which is construed in Elizalde v. Murphy, 146 Cal. 168, 79 P. 866.

tain that his estate is in good order before he files final report and petition for distribution. This appellant was not reasonably certain and hence delayed settlement."

The record does not show that the court made any unreasonable request or attempted to press the settlement unduly. Questions were repeatedly asked of appellant, giving him opportunity to furnish a reasonable excuse for the delay; extensions were repeatedly granted, apparently without question; and the record shows no progress toward settlement during the long period of the delays. Appellant ignores the fundamental aim of probate procedure, that there should be a "speedy settlement and adjudication of rights in the property of a decedent to the end that those entitled to share therein may have the full benefit of the rights which the law gives them at the earliest moment consonant with due process and orderly procedure." 2 Bancroft's Probate Practice, 2 ed., p. 199; 34 C.J.S. Executors and Administrators § 829, p. 943 and pocket part (note 1 citing numerous cases including Montgomery v. First Nat. Bank of Dillon, 114 Mont. 395, 136 P.2d 760; Matthews v. Fuller, 209 Md. 42, 120 A.2d 356; Barrett v. Clark, 189 Md. 116, 54 A.2d 128, 173 A.L.R. 988). It is the duty of the executor and his attorneys to close the affairs of the estate as soon as this can be done without jeopardizing the interest of the affairs with which he is entrusted. In re Hurley's Will, 193 Wis. 20, 213 N.W. 639. We think it is the obligation of a probate court to regularly inquire into the status of estates pending in the jurisdiction,[3] and it is the obligation of the executor or administrator to make a conscientious and diligent effort to expedite the matters in his control, and he will not be heard to make unwarranted excuses. So far as we have been able to determine, a similar situation has not arisen in this State; but in California (from which §§ 2–201 and 2–202 were taken), it has been held, and we think properly so, that the discretion of the appoint-

ing court in matters relating to revocation of letters testamentary is broad and its exercise is subject to review only for abuse. 2 Bancroft's Probate Practice, 2 ed., p. 183; In re Newell's Estate, 18 Cal.App. 258, 122 P. 1099; In re Bell's Estate, 135 Cal. 194, 67 P. 123. In the present case the record does not disclose, and appellant has not pointed out, any act of the probate court which constitutes an abuse of discretion.

## V

■ It is urged that the court was not justified in finding appellant guilty of contempt and further that his commitment for an indefinite time is unjustified. In so arguing, appellant contends that no Wyoming statute authorizes a commitment for contempt under the circumstances here present. It is unnecessary to analyze the sections of the statute which he thinks were insufficient to grant the probate court such authority since the power to punish for contempt is inherent in all courts of general jurisdiction and such power exists independently of any special or express grant. 12 Am.Jur. Contempt § 40; 14 Am.Jur. Courts § 171; 17 C.J.S. Contempt § 43. This court has previously given its view of contempt commitments providing for retention and custody until compliance with the court's order. In Ex parte Bergman, 3 Wyo. 396, 26 P. 914, the court in discussing a statute relating to imprisonment for failure to obey a subpoena or citation mentioned the argument that the sentence is for an indefinite time and said at page 918 of 26 P.:

"'* * * The law will not bargain with anybody to let its courts be defied, for a specified term of imprisonment. There are many who would gladly purchase the honors of martyrdom in a popular cause at almost any given price, while others are deterred by a mere show of punishment. Each is detained until he finds himself willing to conform. This is merciful to the submissive, and not too severe upon the

3. § 2–12, W.S.1957 (§ 6–108, W.C.S.1945).

refractory. The petitioner, therefore, carries the key of his prison in his own pocket. He can come out when he will, by making terms with the court that sent him there. But, if he chooses to struggle for a triumph,—if nothing will content him but a clean victory or a clean defeat,—he cannot expect us to aid him. * * *' [In Williamson's Case, 26 Pa. 9.]"

We find nothing in the record prejudicial to appellant. In fact the record indicates that the judges charged with the supervision of the probate court were, in the light of the need of prompt and fair administration of estates in the public interest, most tolerant in providing appellant repeated opportunities to settle and close the estate if he desired, or if he could not to make satisfactory explanation. At the time of such opportunities appellant did not avail himself of such but steadfastly refused both actively and passively to carry out the duties of his trust. Accordingly, the action of the probate court is affirmed.

Affirmed.